**STATE ex SPARKS v KROEGER et, etc**

Ohio Appeals, 9th Dist, Summit Co

No 2398.   Decided Sept 29, 1933

Rockwell, Grant, Thomas & Buckingham, Akron, Smoyer, Kennedy, Smoyer & Vogel, Akron, and George W. Rogers, Akron, for plaintiff.

Ray B. Watters, Prosecuting Atty., Akron, and Clyde B. MacDonald, Asst. Pros. Atty., Akron, for defendants.

pal offices shall be made at direct primary elections or by petition **as provided by law** ⁚ * *."

The enactment of the charter provisions of the city of Akron with reference to nominating petitions, as hereinafter set out, is a provision by "law" within the meaning of the foregoing constitutional provision. **Dillon v City of Cleveland, 117 Oh St 258, at page 276:**

"Quite uniformly, and, so far as we have been able to ascertain, without exception, the courts of those states having municipal charters with powers of local self-government have declared that a city charter enacted by the voters of a municipality is a 'law' as much as if it were enacted by the Legislature of the state."

See also, **Jones v City of Cleveland, 124 Oh St 544.**

**Art. XVIII, §3, of the Ohio Constitution,** provides as follows:
"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

By virtue of this last-enumerated section of the constitution, the people of the city of Akron, on November 5, 1918, adopted a charter of the city of Akron, to become effective January 1, 1920. That charter, among other things, provides as follows:

"Section 4. The method of nomination of all elective officers provided for by this charter shall be by primaries, and by petition."

By referendum vote on November 4, 1924, the section of the charter providing for nominations by petition was amended to read as follows:

"Section 6. Nomination by petition. The name of any elector shall be printed upon the ballot at a regular election whenever a petition as hereinafter described shall have been filed in his behalf with the election authorities. Such petition shall be signed by at least ten per centum (10%) of the electors who voted at the last regular municipal election of the city at large, or of the ward, as the case may be. No elector shall sign petitions for more candidates than the number of offices of that particu-

## OPINION

### BY THE COURT

This court, by reason of the press of business, and for the further reason that this action is of such a nature that an early adjudication thereof is necessary, deems it inexpedient to do more than set out its conclusions, and to briefly state the reasons therefor.

**Art. V, §7 of the Ohio Constitution,** as amended in 1912, provides as follows:

"Primary elections. All nominations for elective state, district, county and munici-

lar designation to be filled at the election, and should he do so, his signature shall be void as to the petition or petitions last filed."

And by referendum vote on November 8, 1921, section 8 of the charter was amended to read as follows:

"All nomination papers comprising a petition shall be assembled and filed with the election authorities, as one instrument, not later than sixty days before the election. Any person nominated under this charter shall file with the election authorities his written acceptance of said nomination not later than forty-five days before the day of election and, in the absence of such acceptance, his name shall not appear on the ballot."

The Supreme Court of this state, in repeated instances, has held that the provisions of a city charter in all matters of local self-government are paramount to the general laws enacted by the legislature.

It has held that "the power to regulate and supervise elections is a power of local self-government, and is extended even to the point of permitting a charter city to determine that women may vote at a municipal election prior to their general enfranchisement." It has held that, by its charter, a municipal corporation might provide for the granting of a franchise to build a street railway upon the streets of the city without the consent of abutting property owners, when, under the state law, such consent was necessary. It has held that municipalities have the right, under their charters, "to determine what officers shall administer their government, which shall be appointed and which elected, that the nomination of elective officers shall be made by petition by a method prescribed," although the state law at that time provided for such matters. It has held that, by charter, a municipality has power to provide that in the election of municipal officers, the Hare system of proportional representation should be used in the city, although the state laws provided for a different form of ballot. It has held that the manner of regulating the civil service of a city is peculiarly a matter of municipal concern, and that under a charter a municipality has the right to adopt provisions regulating the civil service which differ from the general laws of the state on that subject. It has held that a municipality might provide, by charter, for voting machines to be used in the election of municipal officers, although the state laws gave no such right in reference to state and county officers and the constitution provided that elections should be held by ballot.

Some of the cases upon the question of the power of charter cities to legislate, by charter, in reference to matters of local self-government, are the following:

State ex v Lynch, Auditor, 88 Oh St 71.

Fitzgerald et, etc v City of Cleveland, 88 Oh St 338.

State ex v Edwards et, 90 Oh St 305.

Billings et v Cleveland Railway Co., 92 Oh St 478.

State ex v French et, 96 Oh St 172.

Switzer et, etc v State ex, 103 Oh St 306.

Reutener v City of Cleveland et, 107 Oh St 117.

Murphy v City of Toledo, 108 Oh St 342.

Lorain St. Rd. Co. v Pub. Util. Comm., 113 Oh St 68, at p. 78.

Dillon v City of Cleveland, 117 Oh St 258, at p. 275.

State ex v Green, 121 Oh St 301.

Mulcahy v City of Akron, 27 Oh Ap 442.

The nominating and electing of city officials is peculiarly a matter of local self-government, and a consideration of the foregoing and other holdings of the Supreme Court leads us to the unanimous conclusion that the provisions of the charter of the city of Akron in reference to the nomination of municipal candidates by petition govern and control, and that it was the duty of the board of deputy state supervisors of elections to follow said charter provisions.

It is urged that the construction placed upon said charter provisions by the board of elections renders said provisions unconstitutional, but we are unable to agree with that contention.

And it is further urged that the construction placed upon said provisions by the board of elections should not be permitted by this court.

The rule of interpretation to be utilized by this court in construing the wording contained in the charter has been laid down by our Supreme Court in the case of Hayner v State, 83 Oh St 178, at page 198, as follows:

"Courts are not concerned with the question of the wisdom or the usefulness of this class of legislation. * * * The courts will do their whole duty when they determine whether or not the particular act, in the

provisions challenged, is or not within the competency of the law-making body, and if it be, then to give construction to the language employed, as it is found in the statutes, and award judgment accordingly."

In construing a statute, it was stated in the second paragraph of the syllabus of the case of **Slingluff v Weaver, 66 Oh St 621**, which statement was quoted with approval in the case of **Scheu v State, 83 Oh St 146**, at p. 158:

"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

In a later case the Supreme Court uses this language:
"It is not the province of the court to legislate, either directly, or by extending the language employed by the legislature; the court is authorized only to interpret and apply the provisions enacted by the legislature, and where the language of such provision is clear and free from ambiguity there is nothing to interpret or construe."
**Board of Education v Boal, 104 Oh St 482**, at p. 486.

This same rule has heretofore been announced by this court in the cases of **Miller v Auble, 31 Oh Ap 67**, and **Bevin v Griffiths, 44 Oh Ap 94**, at p. 98, et seq.
This rule of construction applies especially to laws made by the people in the adoption of charters.

The language used in the charter is:
"Such petition shall be signed by at least ten per centum (10%) of the electors who voted at the last regular municipal election of the city."

Applying said rule of construction to the wording of the charter, it becomes apparent at once that the board of deputy state supervisors of elections has followed the plain wording of the charter provisions in reaching the conclusion which it has announced, and we find that said language of the charter is plain and unambiguous, and that this court is without power to declare that the words used mean something other than their ordinary and commonly accepted meaning.

"It is not the province of a court to write constitutions or to give to the language used such forced construction as would warp the meaning to coincide with the court's notion of what should have been written therein. On the contrary, the language used must be given its usual and ordinary meaning."
**Telephone Co. v Cleveland, 98 Oh St 358**, at p. 368.

"The province of construction is to ascertain and give effect to the intention of the legislature, but this intent must be derived from the legislation and may not be invented by the court. To supply the intention and then give the statute effect according to such intention would not be construction but legislation."
**State ex v Roney, 82 Oh St 376**, at p. 380.

The additional nominating papers of the relator avail him nothing, because he could not acquire thereunder the 264 additional signatures without losing, by virtue of the latter part of section 6 of the charter, hereinbefore quoted, the 285 signatures which appeared upon the nominating petitions of other candidates; and were it to be held that said additional nominating papers could properly be appended to those originally filed, relator would lose his priority of filing, and, by reason thereof, have deducted from his petition the 285 names appearing upon other petitions theretofore filed. This by reason of the fact that it would be necessary, under section 8 of the charter, to withdraw the first nominating papers, and then assemble and file all of said nominating papers with the election authorities as one instrument.

We adhere to our ruling at the time of the argument that the relator is entitled to have counted as qualified signers the 485 electors who voted at the 1931 election and are registered to vote at the coming election, but have not yet transferred their registrations from the precincts where they resided in 1931 to the precincts where they now reside; but giving the relator the benefit of such signatures, he lacks, under the construction of the law which we have indicated, sufficient signatures to entitle him to have his name placed upon the ballot.

This court having reached the conclusion that the people of the municipality of Akron had the right, if they chose so to do, to enact the provisions hereinbefore quoted into the city charter, and the interpretation placed upon said provisions by the board of deputy state supervisors of elections being entirely consonant with the plain wording contained in said charter provisions, it necessarily follows that the petition of the relator must be dismissed and the writ of mandamus denied.

It is accordingly so ordered.

WASHBURN, PJ, FUNK and STEVENS, JJ, concur in judgment.